RENE L. VALLADARES
Federal Public Defender
State Bar No. 11479
KEISHA K. MATTHEWS
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
Keisha_Matthews@fd.org

Attorney for Eric Ramirez

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-000151-APG-NJK |
| Plaintiff, | **SENTENCING MEMORANDUM**[1] |
| v. | |
| ERIC RAMIREZ, | |
| Defendant. | |

Defendant, Eric Ramirez, through his counsel, Keisha K. Matthews, Assistant Federal Public Defender, submits this Sentencing Memorandum for consideration by the Court. Mr. Ramirez reserves the right to supplement this filing with additional authorities or information, as the Court may permit, at or before the sentencing hearing scheduled on May 21, 2025, at 9:30 a.m.

DATED: May 14, 2025.

RENE L. VALLADARES
Federal Public Defender

*/s/ Keisha K. Matthews*

KEISHA K. MATTHEWS
Assistant Federal Public Defender
Attorney for Eric Ramirez

---

[1] This Sentencing Memorandum is timely filed.

## I.    INTRODUCTION

On March 13, 2024, Mr. Ramirez pled guilty to counts two and six of the Indictment charging him with trafficking in firearms, in violation of 18 U.S.C. § 933(a)(1) and (b) and distribution of a controlled substance 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi).[2]  Mr. Ramirez accepted responsibility for his actions and entered his guilty plea pursuant to a plea agreement.[3] Because this plea agreement was the product of negotiations between the defense and the government, after Mr. Ramirez's decision to give up his constitutional right to go to trial, and in consideration of the sentencing factors in 18 U.S.C. § 3553(a), this Court should accept the plea agreement and sentence Mr. Ramirez to 60 months in custody. The plea agreement preserves the parties' ability to argue for different terms of supervised release.[4] Mr. Ramirez further requests that this Court sentence him to a four-year term of supervised release.

## II.    ARGUMENT

### A.    Mr. Ramirez requests the Court give him the benefit of his Plea Agreement.

A sentence that follows the terms of the plea agreement favors the strong public policy for plea agreements.  *United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990) ("finding that public policy strongly supports plea agreements…"). Plea agreements serve significant purposes that include saving the government time and resources and it results in finality. *Id*.

---

[2] ECF No. 29.

[3] ECF No 28.

[4] *Id.*

2

Mr. Ramirez took responsibility for his actions and pled guilty to the charged offenses. He gave up his right to file any pretrial motions, his fundamental constitutional right to a trial by his peers, and numerous other trial, appellate, and collateral challenge rights.  In return, the parties entered into a plea agreement wherein the parties agreed to jointly recommend a sentence of 60 months in custody.[5]

The plea agreement contemplated the charges, Mr. Ramirez's history and background, and the other factors outlined in 18 U.S.C. § 3553(a).  A sentence that follows the terms of the plea agreement avoids unwarranted sentencing disparity.  18 U.S.C. § 3553(a)(6).  When the parties agree on a particular sentence—and then a different sentence is imposed—that chain of events create disparities in the negotiation process and the sentencing of different individuals who the parties agree should receive similar treatment.

The recommended sentence here results from negotiations by the parties after each weighed the strengths and weaknesses of their case.  Mr. Ramirez urges this Court to allow him the benefit of his bargain, to consider the arguments presented below, and then sentence him to 60 months imprisonment followed by a four-year term of supervised release.[6]

**B.    A sentence of 60 months is sufficient but not greater than necessary to comply with the factors in 18 U.S.C. § 3553(a).**

Mr. Ramirez is the second oldest of his mother's five children.[7] Sadly, he never knew his father and has relied on his mother for parental love, guidance

---

[5] *Id.*

[6] The United States Probation Office also recommends a downward variance to 60 months in custody, followed by four years of supervised release. PSR at pg. 25, *Sentencing Recommendation.*

[7] PSR ¶ 58.

3

and support all of his life.[8] When Mr. Ramirez was three years old, his mom and older sister moved from Atlanta, GA to Las Vegas, NV.[9]

Mr. Ramirez's mom worked hard to provide for her young family. While all of the families basic needs were met, life in Las Vegas was not easy for Mr. Ramirez especially as it relates to his early struggles with addiction and depression. At age 13 or 14, Mr. Ramirez was introduced to marijuana and began using it on a daily basis.[10] At age 16 or 17, Mr. Ramirez was diagnosed with depression and began using Xanax on a daily basis, taking anywhere from seven to eight pills a day.[11] When he was 18 years old, he began using oxycodone on a daily basis, taking five to six pills a day.[12] Mr. Ramirez has never received any formal drug treatment for his addiction challenges. He is interested in engaging in drug and mental health treatment programing while in the BOP and upon his release.

Mr. Ramirez's struggles with addiction and depression also impacted his performance in school. He completed the 10th grade but later dropped out.[13] Mr. Ramirez prides himself on being a quick learner and has a goal of obtaining his GED and a skilled trade while in custody.[14] Mr. Ramirez has already shown that he can make good use of his time in custody. Over the past 21 months, he has maintained employment in custody working in the kitchen in various roles.

---

[8] *Id.*

[9] PSR ¶ 58.

[10] PSR ¶ 73.

[11] *Id.*

[12] *Id.*

[13] PSR ¶ 76.

[14] PSR ¶ 78.

4

He is looking forward to his transfer to a BOP facility where there will be more vocational and programming options available to him.

Mr. Ramirez is a young man, who if given the proper supports, has the ability and desire to reset the course for his life. He wants to make these changes not only for himself but also for his four-year old son. Mr. Ramirez than his son and he prides himself on being a doting father. He considers himself fortunate to have the continued love and support of his immediate family, especially his mom, sister[15] and son. Mr. Ramirez's mom and sister have been instrumental in ensuring that he has regular contact with the family while in custody via phone and video calls.

Mr. Ramirez is deeply remorseful for his conduct in the instant case. His willingness to take responsibility for his actions is evidenced by his guilty plea. He understands the seriousness of his charges and is ready to accept the consequences of his actions.

### C.    A downward departure to 60 months is appropriate in this case based on Mr. Ramirez's youth.[16]

Under USSG § 5H1.1, a defendant's youthfulness may be relevant in determining whether a downward departure is warranted. "Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems… In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop." *Id.* Additionally, youthful defendants tend to be "more amenable to rehabilitation." *Id.*

---

[15] *See* Exhibit A.
[16] PSR ¶ 102.

Here, Mr. Ramirez was only 20 years old when he engaged in the underlying conduct. He is the exact type of defendant imagined under this guideline. His youth combined with his unmanaged drug addiction made him more susceptible to risk-seeking, impulsive, and criminal behavior.

Mr. Ramirez is amenable to rehabilitation and treatment. He plans to engage in programming while in the BOP with a goal of obtaining his GED and learning a trade. Additionally, he agrees with the programmatic recommendations made by the United States Probation Office regarding his special conditions of supervision. A downward departure of three months from the low-end guideline range to the 60-month mandatory minimum is appropriate here in consideration of Mr. Ramirez's age.

**D.    A supervised release term of four years is sufficient to serve the purpose of supervised release.**

A four-year term of supervision is a significant period that will accomplish the goals of sentencing. A sentence, including a supervised release term, is substantively unreasonable when it is "greater than necessary to accomplish" the statutory goals of sentencing. These goals include the need to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

A four-year term of supervision is substantively reasonable and achieves the goals of sentencing.

### E.   Recidivism is lower when lengths of incarceration and supervised release are low.

In some cases, a term of incarceration can have an inverse effect on the goals of sentencing. *See Gall v. United States*, 552 U.S. 38, 54 (2007) ("[T]he unique facts of Gall's situation provide support for the District Judge's conclusion that, in Gall's case, 'a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing.'").

The United States Sentencing Commission studied recidivism shortly after the enactment of the Sentencing Reform Act of 1984 (SRA).[17] They found that recidivism information is central to three primary purposes of punishment.[18] These three purposes (specific deterrence, incapacitation, and rehabilitation) focus on the prevention of future crimes through correctional intervention.[19]

One area specifically covered in the study dealt with recidivism and the sentences imposed.  Offenders with shorter lengths of imprisonment had lower recidivism rates.[20]  The highest recidivism rates were found among offenders with longer sentences.[21]

Long periods of incarceration are not meaningful deterrents. A sentence of 60 months in custody, followed by four years of supervised release is a sufficient

---

[17] Recidivism Among Federal Offenders: A Comprehensive Overview, United States Sentencing Commission (March 2016), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

period of time to achieve the sentencing goals of 18 U.S.C. § 3553(a).

The National Institute of Justice also lists various things to consider about deterrence:

1. Sending an offender to prison isn't a very effective way to deter crime. Prisons are good for punishing criminals and keeping them off the street, but prison sentences are unlikely to deter future crimes. Prisons may have the opposite effect. Inmates learn more effective crime strategies from each other, and time spent in prison may desensitize many to the threat of future imprisonment.[22]

2. Increasing the severity of punishment does little to deter crime. Laws and policies designed to deter crime are ineffective partly because offenders know little about the sanctions for specific crimes.[23]

3. The certainty of being caught is a more powerful deterrent than punishment. Research shows that if offenders think there's only a slim chance they will get caught, the severity of punishment is an ineffective deterrent to crime.[24]

In fashioning an appropriate sentence for Mr. Ramirez, the Court should consider several additional factors. First, prior to his arrest in this case, Mr. Ramirez has never been to prison, and he will definitely be going to the BOP to serve the remainder of his sentence. Prior to his arrest in this case, his longest custodial sentence was two days in county jail. Mr. Ramirez has been in pretrial detention since August 9, 2023. The recommended sentence in this case is 10,950 times longer than his previous custodial term. A sentence of 60 months will be

---

[22] *Five Things About Deterrence,* U.S. Department of Justice, Office of Justice Programs (May 2016), https://www.ojp.gov/pdffiles1/nij/247350.pdf.

[23] *Id.*

[24] *Id.*

the longest period Mr. Ramirez has been away from his mom, son, siblings, and friends. This prison term will have a tremendous effect on him and will be more impactful on him than a defendant previously imprisoned.[25]

## III.    CONCLUSION

Mr. Ramirez knows the underlying offense is serious, and he is remorseful for his conduct. He has taken full responsibility by pleading guilty and wants nothing more than to move forward from this chapter in his life. A sentence of 60 months followed by a four-year term of supervised release is appropriate in Mr. Ramirez's case because of the non-violent nature of the offense, the disparities in the drug guidelines, and his plans for rehabilitation.

DATED: May 14, 2025.

Respectfully submitted,

RENE L. VALLADARES
Federal Public Defender

/s/ Keisha K. Matthews
_____

KEISHA K. MATTHEWS
Assistant Federal Public Defender
Attorney for Eric Ramirez

---

[25] *U.S. Baker*, 445 F.3d 987, 992 (7th Cir. 2006).

9

## CERTIFICATE OF ELECTRONIC SERVICE

The undersigned certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on May 14, 2025, she served an electronic copy of the above and foregoing **SENTENCING MEMORANDUM** by electronic service (ECF) to the person named below:

SIGAL CHATTAH
United States Attorney
ROBERT KNIEF
Assistant United States Attorneys
501 Las Vegas Blvd. So.
Suite 1100
Las Vegas, NV 89101

*/s/ Cecilia Valencia*
Employee of the Federal Public Defender

10